GENERAL CONTRACT PURCHASE CORPORATION, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MORRIS WELTCHEK, DEFENDANT-APPELLANT.

Submitted May 26, 1933—Decided September 27, 1933.

For the defendant-appellant, *Elias D. Haut* (*Harry Weltchek,* of counsel).

For the plaintiff-respondent, *Green & Green.*

The opinion of the court was delivered by

PERSKIE, J.   This case comes up on appeal from a summary judgment entered by order dated December 24th, 1932, of the late Chief Justice Gummere, on striking out an answer on the ground that it was sham and frivolous and was filed merely for the purpose of delay.

The facts are not in dispute.   The present suit is upon an insolvent debtor's bond, made by one Joseph Weltchek, and upon which bond the present defendant-appellant appeared as surety.   The bond was entered into pursuant to section 2 of the Insolvent Debtors' act.   2 *Comp. Stat., p.* 2824.   The bond among its several provisions provided as follows:

"Now, therefore, if the said Joseph Weltchek shall appear before the next Court of Common Pleas, to be holden in the county aforesaid, and petition said court for the benefit of the insolvent laws of the state, and shall in all other things comply with the requirements of the said insolvent laws, and shall appear in person, at every subsequent court, until he shall be duly discharged as an insolvent debtor; and if refused a discharge, surrender himself immediately thereafter to the sheriff or keeper of the jail in said county, there to remain until discharged by due course of law, then this obligation to be void; otherwise to remain in force."

The bond aforesaid was executed on May 12th, 1932, a date within the May term of the Court of Common Pleas of Union county.   In July of that year, and therefore at a date still within the May term, the defendant in the original suit, Joseph Weltchek, appeared before the Court of Common Pleas of Union county and petitioned for a discharge.   The hearing day on such petition was fixed by the court as September 8th, 1932, likewise still within the May term.   On the debtor's failure to give certain notice, required by the statute, the matter was continued until November 25th, 1932, at

which time the proceedings for the discharge of the debtor were dismissed. Suit was thereupon brought against the defendant-appellant herein, the surety on the debtor's bond. The complaint filed in this suit, alleged several acts on the part of Joseph Weltchek, all of which it was claimed constituted distinct acts of non-compliance with the provisions of the Insolvent Debtors' act. Among such acts of non-compliance were the following:

"(a) He did fail to apply to the Court of Common Pleas of Union county on the opening day of the term thereof to appoint a day at which time the said court would attend to hear what can be alleged for or against liberation of the said insolvent debtor.

"(b) He did fail to have served on the plaintiff notice in writing of the time and place so appointed by the court.

"(c) He did fail to have the aforesaid notice inserted for four weeks, once in each week in one of the newspapers published in the county town of the county of Union.

"(d) He did fail on October 11th, 1932, to appear personally before the Court of Common Pleas of the county of Union held at the court house, Elizabeth, and petition the court for the benefit under the insolvent laws of this state, and as a result has not received his discharge.

"(e) He failed to surrender himself to the sheriff or keeper of the jail of the said Union county, in accordance with the conditions of the said bond, thereby breaching the same."

The answer denying these allegations was stricken by the late Chief Justice.

For the purpose of appeal we need consider only (a) and (d) of the acts, *supra,* which the plaintiff alleges constituted a non-compliance with the Insolvent Debtors' act. The May term of the court was followed by the October term and the opening day of the latter was October 11th, 1932. The apparent similarity of acts (a) and (d) supra, to the contrary notwithstanding, presents two questions: First, was the appearance by the debtor in the May term, the same term within which the bond was made, a sufficient compliance with the act? Secondly, if not, was the debtor obliged to appear on

the first day of the subsequent term, namely, October 11th, 1932? We are of the opinion that the debtor's appearance and petition to the court at a date during the May term was not a sufficient compliance, and therefore there was no error in the striking of the answer.

The bond, in its terms and conditions, followed the language of the Insolvent Debtors' act (2 *Comp. Stat., p.* 2824), the pertinent part of which is as follows:

"2. That any person or persons who may be arrested or held in custody by any sheriff, constable or other officer in any civil action upon mesne process or process of execution, or upon an attachment for not performing an award, or who may be surrendered in discharge of his or their bail, shall be discharged from arrest or custody by such officers, provided, such person or persons shall make out and deliver to the officer making the arrest, or in whose custody such person or persons may be, a true and perfect inventory, under oath or affirmation, of all his or their goods and chattels, rights, credits, lands, tenements, hereditaments and real estate and shall give bond to the plaintiff at whose suit he or they are arrested with sufficient security, being a freeholder or freeholders and residents in the county, in double the sum for which he or they are arrested or taken in execution *with a condition that he or they will appear before the next Court of Common Pleas, to be holden in the county wherein such arrest is made, and petition said court for the* benefit of the insolvent laws of this state; and that the said defendant will in all things comply with the requirements of the said insolvent laws, and will appear in person at every subsequent court until he or they shall be duly discharged as an insolvent debtor; and if refused a discharge, surrender himself or themselves immediately thereafter to the sheriff or keeper of the jail of said county, there to remain until discharged by due course of law; and in case of the forfeiture of the said bond by breach of any condition therein, the plaintiff, his executors or administrators, may bring an action thereon, and recover the debt, damages and costs due

from the person or persons so arrested, and for which the arrest was made as aforesaid. *Rev.* 1877, *p.* 497."

"3. That any person or persons arrested as aforesaid and having given such bond, shall be entitled to make application for his or their discharge under this act, at the next or any subsequent court after such arrest, as fully and effectually as if he or they were actually confined in the common jail of said county. *Rev.* 1877, *p.* 498."

The statute, therefore, as well as the bond, required by specific terms the appearance of the debtor *before the next Court of Common Pleas, to be holden in the county where the arrest is made, &c.* This could mean nothing else than the term of court that sequentially followed the term of court in which the bond was originally made. In other words, the statute and the bond both required an appearance during the October term of the Court of Common Pleas of Union county.

The cases of *Hart* v. *Boyle,* 60 *N. J. L.* 320; *Glynn* v. *Kelly,* 71 *Id.* 10, and *Braden* v. *Rosenstone,* 83 *Id.* 251, are controlling.

The *Glynn* v. *Kelly, supra,* case is particularly pertinent. In that case an action was brought upon an insolvent debtor's bond, alleging that the debtor did not appear before the next court and petition for his discharge. The defendant stated that he had appeared and petitioned the court after the last continuance of the case, and before the opening day of the next term. The late Chief Justice Gummere held:

"A similar question was presented to this court in the case of *Hart* v. *Boyle,* 31 *Vr.* 320, where, in an action upon an insolvent bond, the defendant pleaded that he had 'appeared before a subsequent Court of Common Pleas and petitioned the court for the benefit of insolvent laws.' It was there held that the plea was bad because it failed to aver that the 'subsequent' court, at which the defendant appeared, was the then next court held after the giving of the bond, and was therefore no answer to a declaration upon a bond, the condition of which required the defendant to appear before 'the then next' Court of Common Pleas and petition for

the benefit of the insolvent laws, and the breach of which condition was alleged to be the failure of the defendant to appear at the court held next after the giving of the bond."

Continuing further, he held on page 12 of the same case:

"Here the declaration alleges that the defendant not only failed to appear before and petition the court held next after the giving of the bond, but that they failed to do so at any other time prior to the institution of this suit. The plea expressly admits the truth of these allegations but seeks to avoid liability by reason of the defendants having applied to the Court of Common Pleas for the benefit of the insolvent laws while the suit was pending. To hold such a plea constituted a valid defense to an action upon an insolvent bond would be to practically declare such bonds to be mere wastepaper, for the debtor could, with impunity, entirely disregard the conditions of the bond unless and until suit was brought upon it, and then defeat a recovery by appearing before the Court of Common Pleas and petitioning it for the benefit of the insolvent laws."

The case of *Braden* v. *Rosenstone, supra,* concerned itself with the construction of the meaning of the words "immediately thereafter," in the Insolvent Debtors' act, in relation to the time at which the debtor is to surrender himself when refused a discharge. It was insisted that the words "immediately thereafter," must be construed to mean within a reasonable time and what is a reasonable time must depend upon the surrounding circumstances and presents a jury question. The decision is important in view of the rule of construction directed to be applied to the statute by Mr. Justice Kalisch in his opinion, in which he stated:

"To adopt the defendant's construction would require us to give a meaning to plain words different from the sense in which they are generally used and understood. No good reason has been advanced why the general and accepted meaning of these words should be disregarded and a meaning given to them which they do not bear and which was not within the contemplation of the legislature when it adopted them."

Likewise pertinent as to the emphasis to be placed on the wording of the Insolvent Debtors' act is the language of the late Chancellor Walker in the case of *Koch* v. *Costello*, 93 *N. J. L.* 367, in which he stated on page 375:

"Merely appearing in the Common Pleas Court is not a compliance with the condition to appear. The debtor is required to do more; he must appear for a purpose. He is required, by himself, or counsel, to crave audience of the court and announce the purpose of his presence, and must also in all things required of him comply with the insolvent laws. That was the undertaking in his bond."

See, also, *General Contract Purchase Corp.* v. *Bronstein*, 11 *N. J. Mis. R.* 290.

In view, therefore, of what appears to us to be the established precedent of our courts, we are of the opinion that the aim of the statute was to require an appearance at the next term following that in which the bond is entered; that the statute requiring this, in plain language, sets us a procedure that must be complied with, and that therefore an appearance at an earlier date—that is, within the same term during which the bond is entered, as in the case at bar, is not a valid compliance therewith.

The second point presented is whether a petitioner applying for the benefit of the Insolvent Debtors' act may make his application any day during the next term or whether it is essential to be made on the opening day of the next term? While under the particular facts of the instant case our determination of the first point is dispositive of the case, nevertheless, it (second point) is of sufficient public interest, particularly to the bar, and therefore we express our views thereon.

This question was raised in *Jaskiewicz* v. *Salamander*, 3 *N. J. Mis. R.* 1247, in which Judge Smith, of the Essex Circuit, held:

"* * * if it means the next term of court, then is it necessary to appear and present the petition on the opening day of the next term of the court? My understanding of the practice which has been built up under the Insolvent Debt-

or's act is that the petition is filed at the opening or during the next stated term of the Court of Common Pleas, and this practice seems to have been recognized in the case of *Hart* v. *Boyle,* 60 *N. J. L.* 321; *Glynn* v. *Kelly,* 71 *Id.* 10, and *Sholes* v. *Eisner,* 90 *Id.* 151."

"A practice which has been approved by the Supreme Court and Court of Errors and Appeals should not be disturbed at the Circuit. The construction, which has been recognized by the upper courts, commenced at a time when the sessions of the Court of Common Pleas only lasted a very short time following the opening of each term. It is true that at the present time the sessions are practically continuous. Still if there is to be a change by reason of the change of the session, it should be by legislative enactment and not by judicial decision."

In *Rosenberg* v. *Ressler,* 35 *N. J. L. J.* 109, the condition was that the debtor should appear before the next Court of Common Pleas, &c., and the allegation was that he did not do so. The defense was that he appeared before a later court. The dates are important. The bond was dated April 4th, 1904, and at that time the Essex Circuit opened on the first Tuesday of April, which in 1904 was the 5th of April. Hence it would seem that the application for discharge should have been made on the following day if it was to be on the first day of the term. As a matter of fact, it was not made until the 10th of December. Judge Dungan said, on page 110: "The 4th day of April was in the December term. The then next term would be the April term, which would end on the opening day of the September term." He seemed to indicate that an appearance at any time within the April term would be sufficient.

The character and practices in the Common Pleas Courts have undergone noteworthy changes. Founded by the Ordinance of Lord Cornbury in 1703 (recited at length in Keasbey on "Courts and Lawyers of New Jersey", volume 1, page 174), and its jurisdiction and nature was confirmed and recognized by the first constitution of the state. *State Const.* 1776, *art. 12, Comp. Stat., p.* 31. (For an exhaustive and

learned review of the origin and growth as well as the present operation of the Court of Common Pleas, see *Croasdale* v. *Court of Quarter Sessions of Atlantic County,* 88 *N. J. L.* 506; 97 *Atl. Rep.* 285.) *Allara* v. *Stevens,* 104 *N. J. L.* 240, 242.

In the old days of practice, the time of holding the courts was designated in the characteristic manner set forth in Lord Cornbury's Ordinance hereinbefore referred to:

"And it is further ordained by the authority aforesaid (Queen Anne) that the General Session of the Peace shall be held in each respective county within this province at the times and places hereinafter mentioned, that is to say—

"For the county of Middlesex, at Amboy, the third Tuesdays in February, May and August, and the fourth Tuesday in November." (Similar provisions being made for the other counties then existing.)

Then a term of court generally consisted of and was regarded as the first day of the term.

This was true of all courts, including the Common Pleas. Yet, in the same ordinance creating the Common Pleas (Lord Cornbury's, *supra*), said court was directed "to be holden in each county at such place where the General Court of Session is usually held and kept, to begin immediately after the Sessions of the Peace does and terminate, *and there to hold and continue as long as there is any business not exceeding three days.*" Even in the early days, the business and practice of the Common Pleas was of primary concern to the people in general. 2 *Keasbey, supra.* With the development of the state in affluence and population, it became necessary to extend the time of holding the court. It requires no explanation to point out that the situation theretofore existing could not continue to prevail. Now the Court of Common Pleas holds annually three stated terms at the times and places prescribed by the Supreme Court. 2 *Comp. Stat., p.* 1726, § 95a; 2 *Comp. Stat., p.* 1711. A term may be, and is, considered as lasting until the commencement of the succeeding term. See *Logan* v. *Lawshe,* 62 *N. J. L.* 567; 41 *Atl. Rep.* 751. The pressure and extent of the court's busi-

ness alone makes this imperative. But aside from historic reasoning, and considering merely the practical and logical construction of the words, "at the next court," it is manifest that it cannot and should not be held to mean "at the first day of every term." If the legislature had so intended it would have been a simple matter for it to have expressly stated "at the first day of every term," as it did in the Practice act (3 *Comp. Stat., p.* 4099, § 149), concerning notices of trial.

In the absence of statutory regulations on the subject it seems to us that:

"The reason of this common law rule of practice having vanished there is no ground upon which this court should be controlled by the dry husk of an absolute precedent." Mr. Justice Depue, in *Loan* v. *Lawshe, supra.*

We are of the opinion therefore that an appearance at any time within the next term constitutes a compliance with the act. In view of our conclusion on the first question, the judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.